LANHAM v. LANHAM.

SAME v. SAME.

1. LIMITATIONS OF ESTATES—ACCRETIONS.—A will provided as follows:

1st. I give to my eldest son George a negro man Jack, and his wife, with her youngest child, with future increase.
2d. All of the rest of my slave property I give to all my other children by my last wife, to be equally divided to the best advantage by my executors; but this property, together with my land and all my other property not

named, is to be kept together by my executors for the support of my wife and children, so long as she lives.

3d. At the death of my wife, my land is to be sold for a division, and the proceeds to be equally divided between all my children, my eldest with my youngest.

4th. When my children that is by my last wife comes to age or gets married, I want my executors to give off to them such portions as my wife can conveniently do without, and that to be valued by three disinterested men, that each one should have its right portion.

5th. I appoint my two friends, S. and C., my executors.

George was a son by a former marriage. *Held*, that the property mentioned in item two was not given by that item to the wife or her children for life, or otherwise, but was to be kept together for their support, and all surplus, after providing such support, belonged ·to the widow and her children. Therefore, property purchased with such surplus could not be disposed of by the widow's will, but passed to her children under their father's will.

2. FINDINGS OF FACT by the Circuit Judge, from contradictory written testimony reported to him, sustained.

3. ADVANCEMENTS—SLAVES.—Slave property advanced to children of testator, under authority of his will, in anticipation of the period fixed for vesting, to wit, the death of testator's widow, should not be charged against the children so receiving, where the widow died after the emancipation of slaves. But money and other property advanced should be charged, with interest, it being an ademption *pro tanto* of the share of the child who received it.

4. INADVERTENCE—REFERENCE.—A matter alleged to have been conceded by counsel on Circuit, and inadvertently overlooked by the judge, referred back for further inquiry.

Before FRASER, J., Edgefield, August, 1891.

These were two actions instituted by Thomas Lanham and Susan Lanham against George B. Lanham and others. The opinion sufficiently states the case.

*Messrs. O. C. Jordan* and *Croft & Chafee*, for plaintiffs.

*Messrs. Henderson Bros., Sheppard Bros.*, and *Norris & Waters*, for the defendants.

January 23, 1893. The opinion of the court was delivered by

MR. JUSTICE MCGOWAN. The Circuit decree states that these two cases were heard together, as the main issue in both is whether the property, which is the subject of the action, passed under the will of Rezin Lanham, the testator named in the *first* case, or under the will of Eliza Lanham, his widow,

and the testatrix named in the *second case.* The testator, Rezin Lanham, died in the year 1846, leaving a will, by which he gave to his son, George B. Lanham, three negro slaves. By the second clause, he gave all of his other slaves to his children by his last wife, to be equally divided between them, and then says: "But this property, together with my land (500 acres), and all my other property not named, is to be kept together for the support of my wife and children, so long as she lives." By the third clause, he directs the land to be sold at the death of his wife, and the proceeds divided amongst all his children, the eldest and the youngest." By the fourth clause, he directs such portions as his wife could conveniently spare, or "do without," to be given off to his children by his last wife, when they come of age or married, &c.

The widow Eliza, and such of her children as had not married and moved off, continued to reside upon the homestead, in accordance with the will of her husband, and by industry, economy, and good management, the widow was enabled to make enough, over and above the support of the family, to purchase property, notably several tracts of land, and among them (1) what was known as the Plank Road tract (430 acres), (2) the Quarles tract (230 acres), and (3) the Whitmore land (50 acres). It seems that she had the view, that these tracts of land were her own property, and took the titles in her own name; and in compliance with the will of her husband, certain articles of property and money had been given off to several of her children at different times. The negro slaves had all been emancipated, and such was the general condition of the family and property in May, 1890, more than forty years after the death of her husband, when the widow Eliza died, leaving a will, by which she undertook to dispose of all the remaining property, which, in this great lapse of time, had been added to that which went into her possession under her husband's will. The action second above stated was instituted in the view, that property which had been acquired during the life or widowhood of Mrs. Lanham, constituted her separate estate, distinct from that of her husband, and that the same passed under her will as her own property.

It was referred to the master to take and report the evidence, which is all in the Brief. The Circuit Judge, among other things, held as follows: "Rezin Lanham died in 1846, and Eliza Lanham died May 16, 1890, leaving a last will, duly admitted to probate. She had divided off to her children, in her life-. time, some of the proceeds and some of the property bought with the proceeds of the estate, and by her will disposes of the balance as if it were her own estate. The qualified executor of the will of Rezin Lanham, after managing the estate for several years, turned over to her the whole property, and it seems that she managed it with great industry, good judgment, and economy, and, under the impression that she had a right to do so, disposed of it as her own. Mrs. Lanham having assumed control of the property in place of the executor, stood in his place, and held these proceeds as *trust property;* and all these proceeds, and the property, real and personal, in which they were invested, still constitute portions of the estate of Rezin Lanham, and is subject to division under his will. * * * The whole income from the land and other property, and the slaves given to these children by the last wife, is devoted to the support of the wife and these (her) children, and belongs to them equally. If there was any *surplus,* as there has been, then the wife and these children, having saved it out of what was given to them for a support, are entitled to it in equal portions—that is to say, one-seventh to each. In the final adjustment between these parties, those who have received portions heretofore must account, and by request of counsel, I will pass upon these advances as far as practicable," &c. The Circuit Judge then proceeded to decide several questions of advancements, which we will consider in connection with the exceptions.

From this decree the plaintiffs appeal:

"1. Because his honor erred in finding, as matter of fact, that the deed from Mrs. Eliza Lanham to Thomas Lanham was voluntary; whereas, it is submitted that the evidence shows that said deed was made upon a valuable consideration, and his honor erred in not so finding.

"2. Because the evidence shows that Mrs. Bates received an

advance of one hundred dollars, and his honor erred in not so finding.

"3. Because his honor erred in assuming that the negro advanced to Mrs. Foreman was one of the negroes which came to her under the will of Rezin Lanham, and that she must not be charged with such negro as an advance; whereas, under the evidence, it appears that such negro was bought by Eliza Lanham after the death of Rezin Lanham, and hence could not have come to Mrs. Foreman under said will; and further, said will provided that the negroes of Rezin Lanham should be held together until the death of the life tenant, and the presumption is that such negroes were so held.

"4. Because his honor erred in finding that Mrs. Lanham had paid the taxes; whereas, it appears from the evidence that Thomas Lanham paid the taxes out of his own money, and the same should have been refunded to him.

"5. Because the evidence shows that Thomas Lanham rendered valuable services to the estate of Rezin Lanham; and his honor, the presiding judge, erred in not allowing him compensation for such services.

"6. Because, in construing the will of Rezin Lanham, the presiding judge erred in holding that the income and profits made upon the lands of the testator were owned by the children of Mrs. Lanham, with herself as tenants in common; whereas, the proper construction of said will was, that whatever was made by Eliza Lanham over a support belonged to her individually, and she had the right to dispose of the same by her will.

"8. Because his honor erred in directing that the tract of 430 acres of land, belonging to Thomas Lanham, should be sold, and that any part of the costs should be placed against said tract of land.

"9. Because, from the evidence and the proper construction of the will of Rezin Lanham, it appears that the Hull & Tobin note and the Briggs note were the individual property of Eliza Lanham; and it further appears from the evidence, that the said notes were given by Eliza Lanham to Susan Lanham, and that the same now belong to her."

DEFENDANT NIXON'S EXCEPTIONS.

1. Because the evidence shows that Mrs. Bates received an advance of one hundred dollars, and his honor erred in not so finding.     2. Because the evidence shows that Thomas Lanham received an advance of $175, and his honor erred in not so finding.     3. Because the evidence shows that Mrs. Foreman received a negro, and his honor erred in not holding that she should be charged with such negro.     4. Because his honor erred in holding that Mrs. Nixon should be charged $475, with interest thereon, for the 133 acres of land known as the Martin tract, when the evidence shows that the same was conveyed to her by deed from Thomas Lanham for a valuable consideration, and that said land never constituted any part of the Rezin Lanham estate.     5. Because his honor erred in holding that Mrs. Nixon should be charged interest on $904.86 she received as an advance.     "6. Because, in the event that Mrs. Nixon should be held liable for interest on the amount received by her as an advancement, Thomas Lanham should be charged with the rents and profits of the 438 acres for the time he held and cultivated the same; and Mrs. Bates, Mrs. Foreman, and Thomas Lanham should also be charged with interest on the amounts advanced each of them respectively."

Exceptions 6 and 7 of the plaintiffs raise the most important question in the case, viz., as to the proper construction of the will of Rezin Lanham.     What interest did the widow Eliza take under her husband's will?     After a specific bequest of slaves to George B. Lanham, his only child by his first wife, the testator gave his other slaves to his children by his last wife, to be equally divided between them; and then says, "but this property, together with my land (homestead), and all other property not named, is to be kept together for the support of my wife and children, so long as she lives," &c.     It is contended that, under this provision, the widow took substantially a life estate, and as a consequence was entitled, in her own right, to all that was added to the property during her widowhood.     We can not accept this view.     We do not think that such was the intention of the testator.     It will be observed that neither the homestead nor the slaves were given

to *the widow* for any period whatever. It is true that her death was the time indicated for the sale and division of the property among the children of the testator, but, in the meantime, the property was not *given to the widow for life*, with limitation over, as the court construed the will in the case of *McCreary* v. *Burns*, 17 S. C., 46. Indeed, as we understand it, the property was to be "kept together" as a part of the testator's estate, for the support of his wife and her children, until the death of the mother, when the property should be divided, as directed by his will. The widow had the same interest as the children, which was merely "a support" during her life. We do not think that this is a case for the application of the rule between tenant for life and remaindermen; and we concur with the Circuit Judge as to his construction of the will of Rezin Lanham, "that the whole *income* from the land and other property, and the slaves given to the children of the last wife, was devoted to the *support of the wife and these her children*, and belongs to them equally; that the surplus, or accretions saved by the wife and children out of what was given them for a support, should go to them in equal portions—that is, one-seventh to each."

The conclusion reached as to the proper construction of Rezin Lanham's will has the effect of simplifying the other subordinate questions in the case. The will directs "that such portions as his wife could conveniently do without" should be given off to his children "when they come of age or get married," &c. Under this provision advancements were made to several of the children at different times and in different amounts, which were, as far as practicable, determined by the judge.

It seems that the widow Eliza made a deed (January 20, 1881,) of the 438 acre tract of land to her unmarried son, Thomas Lanham, who lived with her, and that he had a claim for services rendered the estate. The Circuit Judge found as a fact, that the estate owed him (Thomas) nothing for services; that at the time the deed was executed, Thomas had full knowledge of the manner in which the property was held; that the deed was voluntary; and he decreed

that the said land belonged to the estate of Rezin Lanham.
Exceptions 1, 4, 5, and 8, complain of these findings and rul-
ings in reference to Thomas. We have looked through the
testimony, which is all in the record, and while on some points
it is somewhat contradictory, we can not say that on this sub-
ject the judge committed error.

Execption 9 complains of error, in that the Hull & Tobin
and the Briggs notes were the individual property of the
widow Eliza, and it was shown by the evidence, that in
her lifetime she had given them to her unmarried daugh-
ter, Susan Lanham, and that the same now belongs to
her; and his honor erred in not so finding. The question,
whether the said notes were the individual property of the
mother Eliza, has, in effect, been already decided in the neg-
ative, by the construction herein given to the will of Rezin
Lanham, the consequence being that Mrs. Lanham had no
right to give the notes to her daughter Susan, even if she at-
tempted to do so.

Exceptions 2 of plaintiffs and 3 of defendant Nixon complain
that the Circuit Judge committed error in assuming that the
negro slave advanced to Mrs. Foreman was one of the
negroes which came to her under the will of Rezin Lan-
ham, and that she must not be charged with such negro
as an advance; whereas, it appears that said negro was bought
by Eliza Lanham after the death of Rezin Lanham, and hence
could not have come to Mrs. Foreman under said will; and,
further, said will provided that the negroes of Rezin Lanham
should be held together until the death of the life tenant, and
the presumption is that such negroes were so held." The
Circuit Judge held, that "Mrs. Foreman has received and must
account for $100, and interest from the time she received it. I
must assume that the slave given off to her was one of those
left by Rezin Lanham, and I do not think it would be proper
to charge her for the value, as all of this species of property
has now no value, and the property can not now be brought
into the partition." . Was this error? Under the construc-
tion of the will of Rezin Lanham, we do not think it makes
any difference whether the slave put into Mrs. Foreman's pos-

session was one of those which belonged to Rezin Lanham or was a part of the accretions during the widowhood of Eliza. The doctrine of advancements does not apply in cases of testacy, except where they are expressly provided for by the will itself. In technical advancements by an intestate during his life, the time indicated for the advancements to be brought into settlement is the death of the intestate. This case is peculiar in this, that the advancements to be made were during the life of the widow, and the time for settlement was her death. Long before that event, slaves were emancipated, and ceased to be property, and, therefore, in no proper sense can they be charged as advancements. See *Wilson* v. *Kelly,* 21 S. C., 535, and cases there cited. We are unable to perceive any reason why the same principle should not apply where what is called advancements are made by authority of a will, as well as where they are made in his lifetime, by one who dies intestate. We also concur with the Circuit Judge in charging Mrs. Foreman with $100, and interest, given to her by her mother; this advancement being an ademption *pro tanto* of her share of the property to be divided.

Exception 4 of defendant Nixon charges that "the Circuit Judge erred in holding that Mrs. Nixon should be charged with $475, with the interest thereon, for the 133 acres of land known as the Martin tract, when the evidence shows that the same was conveyed to her by deed from Thomas Lanham for a valuable consideration, and that said land never constituted any part of the Rezin Lanham estate." The judge held that Mrs. Nixon must account for the tract of land (133 acres) at $475, the amount of the estate money which was invested in it, with interest from February 8, 1879, and also for the sum of $904, with interest from February 24, 1890, being an ademption *pro tanto* of her share of the property. The land was purchased by what was made "over and above a support for the family," and became part of the accretions of the estate of Rezin Lanham. This was the necessary result. We can not say that in this the Circuit Judge committed error.

Exceptions 2 of plaintiffs and 1 of Nixon complain that it was error to hold that "Mrs. Bates had received no advances,"

whereas the evidence shows that Mrs. Bates received an
4   advance of $100, and she should have been charged with
it.   We have looked carefully through the testimony in
the record, and we have not been able to find the evidence
upon the subject.   But it was stated at the bar, "that it was
conceded at the time of taking the evidence, and also at the
argument before the Circuit Judge;" but the admission does
not seem to have been taken down, and, under the circum-
stances, we do not feel authorized to reverse the decree upon
that point; but, to prevent possible injustice from what is called
in the printed arguments "an inadvertence," this matter of an
alleged advance of $100 to Mrs. Bates at the time of her mar-
riage, is referred to the master to inquire and report the facts.

The judgment of this court is, that the decree of the Circuit
Court be affirmed, except as to the question of an *alleged advance
of $100* to Mrs. Bates at the time of her marriage, which is
referred back to the master.